760 F.Supp. 1239 (1991)
In re ROSPATCH SECURITIES LITIGATION.
ATLANTIS GROUP, INC., Plaintiff,
v.
ROSPATCH CORPORATION, et al., Defendants.
PLATO PAPER PRODUCTS, INC., Plaintiffs,
v.
ROSPATCH CORPORATION, et al., Defendants.
Jerry ATCOVITZ, Plaintiff,
v.
J. Grant BEADLE, et al., Defendants.
Alan FREBERG, Plaintiff,
v.
ROSPATCH CORPORATION, et al., Defendants.
This order relates to Case Nos. 1:90-cv-805, 1:90-cv-806, 1:90-cv-807, Nos. 1:90-CV-805 to 1:90-CV-807 and 1:91-CV-085.
United States District Court, W.D. Michigan, S.D.
March 14, 1991.
As Amended April 10, 1991.
*1240 *1241 *1242 Theodore Souris, James Albert Smith, Bodman, Longley & Dahling, Detroit, Mich., James W. Beasley, Jr., Cadwalader, Wickersham & Taft, Palm Beach, Fla., Grant B. Hering, Cadwalader, Wickersham & Taft, New York City, for Atlantis Group, Inc.
Robert H. Yaffe, Miami Beach, Fla., William J. Waddell, Grand Rapids, Mich., Stanley R. Wolfe, Jay Robert Stiefel, Janice Siegel, Berger & Montague, P.C., Stuart H. Savett, Jeanne P. Wrobleski, Kohn, Savett, Klein & Graf, P.C., Philadelphia, Pa., for Irving M. Bier et al.
William J. Waddell, Grand Rapids, Mich., Paul Steinberg, Steinberg & Slewett, Miami, Fla., Richard Schiffrin, Schiffrin & Craig, Chicago, Ill., Alvin J. Ivers, Philadelphia, Pa., Jill S. Abrams, Emily C. Komlossy, Abbey & Ellis, New York City, for Jerry Atcovitz.
Jay Robert Stiefel, Berger & Montague, P.C., Stuart H. Savett, Jeanne P. Wrobleski, Kohn, Savett, Klein & Graf, Philadelphia, Pa., for Plato Paper Products, Inc.
*1243 Grant J. Gruel, Gruel, Mills, Nims & Pylman, Grand Rapids, Mich., Mercer K. Clarke, Richard H. Critchlow, Will & Emery, Miami, Fla., William R. Golden, Jr., Kelley, Drye & Warren, New York City, for Rospatch Corp.
L. Roland Roegge, Smith, Haughey, Rice & Roegge, P.C., Grand Rapids, Mich., James N. Nowacki, William R. Jentes, Kirkland & Ellis, Chicago, Ill., Richard H. Critchlow, McDermott, Will & Emery, Michael Nachwalter, William J. Blechman, David H. Lichter, Kenny, Nachwalter, Seymour & Arnold, P.A., Miami, Fla., for Warner, Norcross & Judd and Paul K. Gaston.
Jon G. March, Thomas R. Knecht, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., Mercer K. Clarke, Richard H. Critchlow, McDermott, Will & Emery, Miami, Fla., for J. Grant Beadle, Jones Y. Pharr, Jr., James R. Sebastian, Jr., Keith C. Vander Hyde and Glenn M. Walters.
Gregory L. Curtner, Carl H. von Ende, Peter W. Waldmeir, Miller, Canfield, Paddock & Stone, Detroit, Mich., Jon G. March, Thomas R. Knecht, Miller, Johnson, Snell & Cummiskey, Grand Rapids, Mich., Mercer K. Clarke, Richard H. Critchlow, McDermott, Will & Emery, Miami, Fla., for Thomas H. Butler.
H. Rhett Pinsky, Pinsky, Smith, Fayette & Hulswit, Grand Rapids, Mich., Stuart J. McGregor, Miami, Fla., for Eugene J. Harris.
William F. Hunting, Jr., Law, Weathers & Richardson, Grand Rapids, Mich., Mark Hicks, Miami, Fla., for William E. Malpass, Jr. and Joseph A. Parini.
John W. Allen, Howard & Howard, P.C., Kalamazoo, Mich., Mercer K. Clarke, Richard H. Critchlow, Will & Emery, Miami, Fla., for Paul V. Smith.
Fred W. Freeman, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, Mich., Richard A. Glaser, Dickinson, Wright, Moon, Van Dusen & Freeman, Grand Rapids, Mich., for Arthur Andersen & Co.

OPINION
HILLMAN, Senior District Judge.
In these consolidated actions, plaintiffs assert federal securities and state law violations against the various defendants. According to the complaints, defendants took actions which allegedly amounted to a fraud on the stock market and caused plaintiffs to suffer damages. Before the court are motions to dismiss these cases. The motions have been fully briefed and oral argument was heard on February 7, 1991. For the reasons that follow, defendants' motions are granted in part and denied in part.
There are three cases under consideration in these motions to dismiss. In the first case, No. 1:90-cv-805, plaintiff Atlantis Group, Inc. ("Atlantis") is a Delaware corporation with its base of operations in Florida. From October 8, 1987 to November 18, 1988, Atlantis purchased 476,100 shares of Rospatch common stock at an average price of $20.87 per share. Atlantis, ¶ 32. Atlantis currently owns about 20% of Rospatch outstanding stock and since mid-1989 has had two representatives on the Rospatch board of directors.
In the second case, No. 1:90-cv-806, plaintiff Plato Products, Inc. ("Plato") purchased Rospatch common stock in March 1987 and seeks to represent the class of investors who purchased Rospatch common stock during the period from March 1987 through March 1990.
In the third case, No. 1:90-cv-807, plaintiffs Jerry and Rosalyn Atcovitz were Rospatch common stockholders during the period from March 1987 through March 1990, and have filed a shareholder derivative action.
Defendant Rospatch is a Michigan corporation headquartered in Grand Rapids. Rospatch manufactures wood products and prior to divesting its Technical Products Group ("TPG") in 1989, was involved in the defense electronics business. Joseph V. Parini ("Parini") was Rospatch's president, chief executive officer and director. Defendant William E. Malpass ("Malpass") was Rospatch's chief financial officer, vice *1244 president-finance, secretary and treasurer. Defendant Paul V. Smith ("Smith") was Rospatch's chief operating officer. Defendant Eugene Harris ("Harris") was Rospatch's controller. Defendant J. Grant Beadle, Thomas W. Butler, Jones Y. Pharr, Jr., James R. Sebastian, Jr., Keith E. Vander Hyde ("Vander Hyde") and Glenn Walters were members of Rospatch's board of directors. Collectively, they are referred to as the "Outside Directors." Defendant Warner, Norcross & Judd ("Warner Norcross") was Rospatch's former legal counsel. Defendant Paul K. Gaston ("Gaston"), managing partner at Warner Norcross, was Rospatch's former attorney and a member of the Rospatch board of directors. Defendant Arthur Andersen & Co. ("Arthur Andersen") was Rospatch's independent auditor.

INTRODUCTION
When considering a motion to dismiss, the factual allegations in the complaint must be taken as true. Craighead v. E.F. Hutton & Co., Inc., 899 F.2d 485, 489 (6th Cir.1990). What follows is a recitation of the allegations, as distilled from Atlantis' complaints.
During the time Atlantis purchased Rospatch stock, Atlantis claims that it expressly relied upon the then currently available public information concerning Rospatch, specifically the Rospatch Securities and Exchange Commission filings from 1987 through 1988 (the "public documents"). Atlantis, ¶ 33. The class plaintiffs claim to have relied upon the integrity of the market, which was in turn based upon the then current publicly available information concerning Rospatch, specifically the public documents. Class Action, ¶¶ 48 and 63.
As of December 31, 1986, Rospatch's financial statements showed a net worth of approximately $41 million. The company's net worth was estimated at $43 million as of December 31, 1987. Atlantis, ¶ 45. As of December 31, 1988, Rospatch stated its net worth was approximately $47 million. In or about March 1989, Rospatch placed the Technical Products Group ("TPG"), its defense-oriented businesses, for sale, and listed the TPG at full book value as a "discontinued operation." On May 22, 1989, Rospatch wrote down the net asset value of the TPG from $28.5 million to $21.25 million, a loss of $7.25 million. Atlantis, ¶ 46. Later that same month, Rospatch attempted to sell itself to Atlantis, which had by then purchased approximately 19% of the outstanding stock. Atlantis, ¶¶ 4 and 72. Atlantis entered into a Letter of Intent to acquire Rospatch on June 20, 1989. Atlantis, ¶ 73. Thereafter, Atlantis conducted a due diligence investigation from June through September, 1989. Atlantis, ¶ 79.
In the course of its due diligence investigation, Atlantis claims that it discovered that an impending deal to sell the TPG to a defense company was a "sweetheart deal" whose major beneficiary was to be CEO Parini. Atlantis ¶¶ 69 and 79. Atlantis advised Rospatch that it could get a higher price by selling to other bidders. Atlantis ¶ 79. Rospatch eventually signed agreements to sell the TPG to several buyers at a combined price above the deal negotiated by Parini and Gaston. Atlantis ¶ 79. The prospective buyers of TPG conducted their own due diligence investigation, Atlantis ¶ 78, and as a result of that investigation and Atlantis' investigation, the complaints allege that Rospatch's financial statements were revealed to be suspect in mid-September 1989.
On November 10, 1989, Rospatch wrote down the assets of the TPG by $3,250,000. By December 1989, Rospatch had written down $16,875,000 for the year for the TPG. Atlantis, ¶ 46. Thus, from March 31, 1989 through December 31, 1989, Rospatch wrote off 59% of the net asset value of the TPG, which amounted to writing off 36% of Rospatch's net worth. Atlantis, ¶ 46. The complaints allege concealment of other financial problems. See Atlantis, ¶ 46 C-L.
At the end of 1989, the Audit Committee began to inquire into responsibility for the company's financial problems. Controller Harris was fired for cause in December 1989. Atlantis, ¶ 80. He was found to have kept two sets of books at GTI, a TPG company, and to have falsified the books *1245 and records of GTI to conceal losses. Atlantis, ¶ 46B.
A special counsel to the Audit Committee allegedly concluded in early 1990 that management had "cooked the books" in 1988 and early 1989, in order to grant themselves bonuses and make Rospatch appear to be sound. Atlantis, ¶ 84. The complaints allege that the special counsel found that Parini and Malpass knew and approved of the illegal conduct of Harris, willfully falsified Rospatch's financial statements, and failed to maintain adequate internal accounting controls. Atlantis ¶ 84. The special counsel recommended to the Audit Committee that defendants Parini and Malpass be fired for cause. Atlantis, ¶ 86.
In turn, the Audit Committee recommended that defendants Parini and Malpass be dismissed for cause. Atlantis, ¶ 84. The majority of the board rejected this recommendation, and allowed Parini and Malpass to resign with termination benefits of $500,000 and $75,000, respectively, on March 12, 1990. Atlantis, ¶ 86. Shortly thereafter, the three complaints presently before the court were filed.
The complaints allege that the write-offs taken by Rospatch in 1989 should have been taken in total, or at least in material part, during the period plaintiffs purchased their stock. Atlantis, ¶ 46. As a result, the public documents upon which Atlantis and the market relied during the purchase period, the complaints allege, were materially false and misleading. Atlantis, ¶¶ 44 and 45. According to the complaints, the same facts which caused the write-downs in 1989 were known to the defendants during the purchase period. Atlantis, ¶ 46. Stated another way, nothing abruptly happened in 1989 to cause the TPG to lose almost 60% of its value in that year.
Atlantis blames this fraud on the senior management of Rospatch  Chief Executive Officer Parini, Chief Financial Officer Malpass, Chief Operating Officer Smith, and Controller Harris, acting together with the board of directors, Warner Norcross, the company's attorneys, and Arthur Andersen, the company's auditors.
Gaston, Warner Norcross' managing partner, joined the Rospatch board of directors in 1985 and served as a member of its Executive, Compensation and Nominating Committees. Atlantis, ¶ 9. Gaston is alleged to have been involved in Rospatch's affairs by virtue of his board duties, and by serving as general counsel to the company. Atlantis, ¶ 9. Warner Norcross served as general counsel to Rospatch from 1950 until the firm was terminated in September 1990. Atlantis, ¶ 6. Warner Norcross is alleged to have drafted and filed with the SEC all of the public documents. Atlantis, ¶ 37. The firm allegedly handled the TPG acquisitions and other transactions. Atlantis, ¶ 46.
According to the complaints, the Outside Directors participated in the fraud by remaining silent in the face of financial discrepancies between what was being reported to the public and what was actually occurring at Rospatch. The Outside Directors signed allegedly false financial statements. Atlantis, ¶ 38.
Arthur Andersen approved each year's financial statements, allegedly knowing of, or recklessly indifferent to, the falsity of the information upon which it relied. Atlantis, ¶¶ 39 and 43.
A consolidated motion to dismiss was filed on behalf of all of the defendants. Most defendants filed separate briefs. Many of the briefs addressed the same issues as the consolidated motion. The court will now address the arguments raised in the motions to dismiss on a case by case, count by count basis.

I. Atlantis Group. Inc. v. Rospatch Corp. et al.; Case No. 1:90-cv-805
Atlantis asserts Securities Exchange Act claims, 15 U.S.C. § 78a et seq., relying on this court's federal question jurisdiction and, alternatively, maintains that the court has diversity jurisdiction.
Count I alleges a primary violation of § 10(b) of the Exchange Act and SEC Rule 10b-5 against Rospatch, Warner Norcross, Arthur Andersen, Butler, Gaston, Harris, *1246 Malpass, Parini, Pharr and Sebastian ("primary defendants"). Atlantis, ¶¶ 89-105.
Count II asserts aider and abettor liability against the primary defendants (except Rospatch), as well as two ex-directors (Beadle and Walters), and Smith ("secondary defendants"). Atlantis, ¶¶ 106-113.
Count III, alleging control person liability, is asserted against Gaston, Malpass, Parini, Pharr, and Warner Norcross. Atlantis, ¶¶ 114-123. No federal securities law claims are alleged as to Vander Hyde.
In Count IV, Atlantis asserts state common law claims for breach of fiduciary duty against all defendants. Atlantis, ¶¶ 124-131.
Count V alleges common law fraud against all defendants. Atlantis, ¶¶ 132-142.
Negligent misrepresentation and omission is alleged against all defendants in Count VI. Atlantis, ¶¶ 143-157. Count VII alleges constructive fraud against all defendants except Rospatch. Atlantis, ¶¶ 158-169.
Count VIII alleges fraudulent concealment against all defendants. Atlantis, ¶¶ 170-183.
Count IX alleges a Florida Blue Sky claim against all defendants except Vander Hyde. Atlantis, ¶¶ 184-199.
Count X alleges a Florida RICO count against Rospatch, Gaston, Parini, and Warner Norcross. Atlantis, ¶¶ 200-207.

A. Atlantis' Counts I, II, and III-federal securities law claims. Defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(6).

All defendants argue that the Atlantis complaint fails to state any federal Securities Exchange Act claims upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint and resolve every doubt in plaintiffs' favor. Craighead v. E.F. Hutton & Co., Inc., 899 F.2d 485, 489 (6th Cir.1990) (citing Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984)). "[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," the court must deny a motion to dismiss for failure to state a claim. Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); accord Scheid Inc. v. Fanny Farmer Candy Shops, 859 F.2d 434, 436 (6th Cir.1988).
A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleadings. Davis H. Elliot Co., Inc. v. Caribbean Utils. Co., 513 F.2d 1176, 1182 (6th Cir. 1975). Technically, the 12(b)(6) motion does not attack the merits of a plaintiff's case. It merely challenges the pleader's failure to state a claim properly. Clark v. United States, 760 F.Supp. 664 (W.D.Mich.1991); see 5A Wright and Miller, Federal Practice and Procedure, Civil 2d § 1356, at 340 (1990).
Count I of Atlantis' complaint charges the primary defendants with violation of section 10(b) of the Securities Exchange Act of 1984, 15 U.S.C. § 78j(b), and S.E.C. Rule 10b-5, 17 C.F.R. 240.10b-5. Section 10(b) of the 1934 Act states:
It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange 
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
S.E.C. Rule 10b-5, 17 C.F.R. § 240, states:
It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,

*1247 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading, or,
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
In examining its legislative history, the Supreme Court has commented that section 10(b) was intended to be "a catchall clause to prevent fraudulent practices." Chiarella v. United States, 445 U.S. 222, 226, 100 S.Ct. 1108, 1113, 63 L.Ed.2d 348 (1980). Section 10(b) and Rule 10b-5 must "be construed `not technically and restrictively, but flexibly to effectuate its remedial purposes.'" Affiliated Ute Citizens v. United States, 406 U.S. 128, 151, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741 (1972) (citation omitted). To state a claim for primary liability under section 10(b) and Rule 10b-5, the complaint must allege (1) the use of jurisdictional means (2) to implement a deceptive or manipulative practice (with the requisite scienter) (3) in connection with (4) the purchase or sale (5) of a security (6) causing (7) damages. Mansbach v. Prescott, Ball & Turben, 598 F.2d 1017, 1026 (6th Cir.1979).
The Sixth Circuit applies a "direct contact" test for determining whether a defendant is liable as a primary violator of section 10(b). Molecular Technology Corp. v. Valentine, 925 F.2d 910, at 917 (6th Cir. 1991). There must be a showing of "direct participation in the deceit at issue." Mercer v. Jaffe, Snider, Raitt and Heuer, P.C., 713 F.Supp. 1019, 1025 (W.D.Mich. 1989) (citing Moore v. Fenex, Inc., 809 F.2d 297, 303 (6th Cir.), cert. denied, Moore v. Frost, 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987)).
"[O]nly those individuals who had an affirmative obligation to reveal what was allegedly omitted can be held as primary participants in the alleged deception." Molecular Technology, supra, at 917 (quoting S.E.C. v. Washington County Utility District, 676 F.2d 218, 223 (6th Cir.1982) (emphasis in original)). "A person undertaking to furnish information which contains a material misstatement or omission is a primary participant, so long as he or she is not so removed from the transmission of the misleading information that liability would necessarily become vicarious." See Mercer, 713 F.Supp. at 1025 (citing S.E.C. v. Washington County, 676 F.2d at 223-24).
In Count II, Atlantis alleges that certain defendants are secondarily liable for federal securities violations. Secondary liability may be premised on any one of several theories, including aiding and abetting a securities violation. "A person may be held as [a Rule 10b-5] aider and abettor only (1) if some other party has committed a securities law violation, (2) if the accused party had general awareness that his role was part of an overall activity that is improper, and (3) if the accused aider-abettor knowingly and substantially assisted the violation." Moore, 809 F.2d at 303.
"As to the third requirement, the analysis required by this factor must be particularly exacting in cases involving non-disclosure. The plaintiffs must show that the silence of the accused `was consciously intended to aid the securities law violation,' and must prove either a culpable state of mind, or conduct from which a culpable state of mind can be inferred." Moore, 809 F.2d at 303-04 (citations omitted).
Atlantis' third and final federal law count is control person liability, which is another means besides aiding and abetting for holding a defendant liable for a section 10(b) violation. Herm v. Stafford, 663 F.2d 669, 684 (6th Cir.1981). Section 20(a), 15 U.S.C. § 78t(a), provides:
Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person ... is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts *1248 constituting the violation or cause of action.
In order to plead control person liability, the plaintiff must allege the defendant's power to influence the corporation, as well as culpable participation in the alleged fraud. Wool v. Tandem Computers Inc., 818 F.2d 1433, 1440 (9th Cir.1987). For the first element, plaintiffs must show that the individual defendant had some indirect means of discipline or influence, even if short of actual direction, over the corporation. Myzel v. Fields, 386 F.2d 718, 738 (8th Cir.1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); accord Herm, supra, 663 F.2d at 684 (6th Cir.1981).
The thrust of defendants' Rule 12(b)(6) argument is that Atlantis' complaint alleges, at most, claims of corporate mismanagement and breaches of fiduciary duty and, as such, does not allege securities fraud. Defendants rest their argument primarily on Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). In Santa Fe, the Supreme Court addressed the relationship of section 10(b) to claims of corporate mismanagement or breach of fiduciary duty. The Court held that mismanagement and breach claims, unaccompanied by a claim of deception, misrepresentation, manipulation, or nondisclosure, fail to state a federal cause of action under section 10(b). Id. at 475-76, 97 S.Ct. at 1302.
Reading the four corners of Atlantis' complaint, the allegations involve more than claims that defendants failed to disclose mismanagement or breach of fiduciary duty. Instead, defendants are alleged to have failed to disclose material facts concerning Rospatch's financial condition. See Cowen & Co. v. Merriam, 745 F.Supp. 925, 929 (S.D.N.Y.1990) (fraudulent element of section 10(b) claim is satisfied by allegations of material misrepresentations or omissions of material facts).
A disclosure of Rospatch's true financial condition allegedly would have affected the price Atlantis was willing to pay for Rospatch stock. "The violation of federal law stems from the substantial likelihood that disclosure `would have been viewed by the reasonable investor as having significantly altered the "total mix" of information' available, not from a determination that an undisclosed act constitutes a breach of fiduciary duty or that a transaction was unfair to investors." In re Craftmatic Securities Litigation, 890 F.2d 628, 639 (3rd Cir.1989) (quoting TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)).
In Atchley v. Qonaar Corp., 704 F.2d 355, 358 (7th Cir.1983), the Seventh Circuit reversed a dismissal of federal securities claims which the lower court found were simply mismanagement claims. The appeals court held that allegations that defendants engaged in a fraudulent scheme to depress earnings and failed to disclose underlying facts that would have affected the valuation of the stock stated a section 10(b) claim, in contrast to a "mere breach of fiduciary duty [claim]." Id. at 359; see also Pellman v. Cinerama, Inc., 503 F.Supp. 107, 108 (S.D.N.Y.1980) (Sofaer, J.) (While plaintiffs' grievances involved conduct that, if true, constituted a breach of defendants' fiduciary duties, plaintiffs' complaint at the same time alleged violations traditionally cognizable under federal securities laws).
The court concludes that Atlantis has alleged more than mismanagement or breach of fiduciary duty and has stated claims of misrepresentation, deception, manipulation and nondisclosure.
Defendants further argue that the allegations allege only "fraud-by-hindsight" because there is nothing to suggest that the write-downs relating to the TPG, which were taken in 1989, should have been taken earlier. See DiLeo v. Ernst & Young, 901 F.2d 624, 627-28 (7th Cir.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990) (Generally, only a fraction of financial deteriorations reflects fraud. Investors must point to some facts suggesting that the difference between facts in documents and reality is attributable to fraud); Denny v. Barber, 576 F.2d 465, 470 (2d Cir.1978) (Need more than vague allegations that, as shown by subsequent *1249 developments, the corporation's true financial picture was not so bright as its annual reports had painted and that the defendants knew or were reckless in failing to know this).
Atlantis' complaint alleges that defendants omitted material facts from public documents in 1987 and 1988. These omissions allegedly occurred, to the extent an omission can "occur," before Atlantis' stock purchases. According to Atlantis' complaint, from 1986 through 1989, the TPG had low cash flow and depleting capital. At the time the TPG was sold in 1989, its net asset value had been reduced by 59% in less than a year, which lowered Rospatch's net asset value by 36%. As these allegations must be taken as true in a motion to dismiss, a reasonable inference has been raised that defendants materially overstated the value of the TPG as a "deliberate decision of management to cover up facts likely to depress the market in the company's stock." In re Storage Technology Corp. Sec. Litig., 630 F.Supp. 1072, 1075 (D.Colo.1986).
Defendants argue that Atlantis purchased its stock after the alleged fraud occurred. A plaintiff's pleadings must show that she purchased her stock in connection with the alleged omissions or misrepresentations. Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 731, 95 S.Ct. 1917, 1923, 44 L.Ed.2d 539 (1975). Defendants argue that virtually all of the purported misrepresentations and omissions occurred after Atlantis had purchased its stock from October 1988 to November 1989.[1]
However, Atlantis alleges that defendants knew or were reckless in not knowing that material facts were omitted from the 1987 and 1988 public documents. Atlantis contends it relied on these documents when it made its purchases in 1988 and 1989. Therefore, in this motion to dismiss, the Blue Chip Stamps doctrine does not apply to Atlantis' claims because it purchased its stock during the time that allegedly material information was missing from the public documents.

1. Gaston and Warner Norcross' Rule 12(b)(6) Motion to Dismiss

Gaston and Warner Norcross do not dispute that attorneys may be held liable under section 10(b). See Herman & MacLean v. Huddleston, 459 U.S. 375, 386 n. 22, 103 S.Ct. 683, 690 n. 22, 74 L.Ed.2d 548 (1983). However, Gaston and Warner Norcross argue that they had no duty to disclose any wrongdoing by their client, Rospatch. For example, in Barker v. Henderson, Franklin, Starnes & Holt, 797 F.2d 490 (7th Cir.1986), the Seventh Circuit refused to impose liability on a law firm which acted as counsel to a bond issuer in a suit brought by a purchaser, finding that "knowledge of a material omission is not enough to violate the act or rule." Id. at 495.
Yet, according to the complaint, which the court must take as true for purposes of this motion, Gaston and Warner Norcross together with Parini, conspired to minimize and conceal Rospatch's financial problems. This concealment allegedly induced investors to purchase Rospatch stock at artificially inflated prices. Thus, Atlantis states more than a simple failure to disclose  Gaston and Warner Norcross are alleged to have been prime instigators in the fraudulent scheme.
"A lawyer has no privilege to assist in circulating a statement with regard to securities which he knows to be false simply because his client has furnished it to him." Securities and Exchange Commission v. Frank, 388 F.2d 486, 489 (2d Cir.1968) (Friendly, J.). In Molecular Technology, supra, the Sixth Circuit held that an attorney who knew certain information in an offering circular was misleading could be held liable for section 10(b) claims. At 918. The jury found that the attorney knew of material information and failed to disclose that information in the offering circular. *1250 The Sixth Circuit held that the attorney had a duty to disclose such information to investors and could consequently be held liable for primary federal securities violations under section 10(b). Id.
This court has denied a motion to dismiss a law firm from allegations of approving or assisting in the preparation of false and misleading offering circulars, advertising, and promotional literature. "This alleged conduct certainly qualifies as `furnishing' or `supplying' information to potential investors in a sufficiently direct manner to impose 10b-5 primary liability...." Mercer, supra, 713 F.Supp. at 1025; see also In re Flight Transportation Corporation Securities Litigation, 593 F.Supp. 612, 617-18 (D.Minn.1984) (law firm representing underwriters for public offerings of securities prepared allegedly fraudulent and misleading prospectuses and could be held liable under section 10(b)).
Therefore, the court holds that Atlantis has alleged federal securities claims against Gaston and Warner Norcross and their motion to dismiss these counts is denied. If securities fraud has occurred at Rospatch, whether or not to hold counsel responsible for the fraud is a factual question incapable of resolution in a motion to dismiss. See Basic, Inc. v. Levinson, 485 U.S. 224, 236, 108 S.Ct. 978, 985-986, 99 L.Ed.2d 194 (1988).
Warner Norcross and Gaston next argue that the acts of Gaston are his alone and cannot be imputed to the firm.[2] Gaston is not an associate at Warner Norcross. He is the firm's managing partner. Other courts have found that a senior partner's participation in misrepresentations and omissions may be imputed to the law firm. See Griffin v. McNiff, 744 F.Supp. 1237, 1247 (S.D.N.Y.1990) (knowledge of senior partner of law firm may be imputed to the law firm); In re Fulton, 3 B.R. 600, 603 (E.D.Mich.1980). The court finds that Atlantis has adequately pleaded federal securities claims against Gaston and Warner Norcross and their motion to dismiss these claims is denied.
Atlantis' third count asserts control person liability against Gaston and Warner Norcross. Atlantis has alleged that Gaston was on the board of directors and a member of several Rospatch committees. Gaston and Warner Norcross are alleged to have been heavily involved in Rospatch's affairs. Thus, the court finds Atlantis has alleged that Gaston and Warner Norcross had substantial power to influence Rospatch. As discussed above, their participation in the fraud has been adequately alleged. Control person liability has been pleaded against Warner Norcross and Gaston and their motion to dismiss this count is denied.

2. Arthur Andersen's Rule 12(b)(6) Motion to Dismiss

Andersen is alleged to have known, or recklessly failed to know, of the alleged fraud being committed by Rospatch. Andersen's brief chronicles each alleged accounting error and argues that the error either is not material or is in accordance with generally accepted accounting principles. These are factual questions which cannot be decided on a motion to dismiss. TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); see also James v. Gerber Products Co., 587 F.2d 324, 327 (6th Cir.1978) (Materiality is a factual issue properly submitted to the jury for determination).
In Counts I and II, Atlantis alleges that Andersen has committed a primary violation of section 10(b) and aided and abetted a violation of that section. Knowledge of a material omission from a public securities offering is not enough to violate section 10(b) or Rule 10b-5. There must be a duty to disclose. Dirks v. Securities and Exchange Commission, 463 U.S. 646, 653-54, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911 (1983); Chiarella v. United States, 445 *1251 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980). The duty must come from a duty outside securities law. Dirks, 463 U.S. at 653-54, 103 S.Ct. at 3261. Silence, absent a duty to disclose, is not misleading under Rule 10b-5. Basic Inc. v. Levinson, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).
The Seventh Circuit, most notably among the circuits, has been reluctant to pin a duty to disclose on independent accounting firms in federal securities fraud cases:
It is not the law that whenever an accountant discovers that his client is in financial trouble he must blow the whistle on the client for protection of the investors  so that [the accounting firm] should have taken out an advertisement in the Wall Street Journal stating that it had just discovered its client was losing money, rather than waiting to report this in the next audit report. [I]n deciding whether there should be a [duty to disclose], a court should attend to the practical consequences. Relations of trust and confidence between accountant and client would be destroyed if the accountant were duty-bound to make continuous public disclosure of all the client's financial adversities. And the costs of auditing would skyrocket to compensate for the enormous expansion in potential liability, not to mention the increase in the costs of publication.
Latigo Ventures v. Laventhol & Horwath, 876 F.2d 1322, 1327 (7th Cir.1989) (Posner, J.).
Other courts have held that accountants "have a duty to take reasonable steps to correct misstatements they have discovered in previous financial statements on which they know the public is relying." ITT, An International Investment Trust v. Cornfield, 619 F.2d 909, 927 (2d Cir.1980). In Fischer v. Kletz, 266 F.Supp. 180, 188 (S.D. N.Y.1967), the court summarized this viewpoint:
Where it gives an opinion or certifies statements, an auditing firm publicly assumes a role that carries a special relationship of trust vis-a-vis the public. The auditor in such a case holds itself out as an independent professional source of assurance that the audited company's financial presentations are accurate and reliable.... The importance of the act of certifying is such that a continuing duty to disclose has been imposed where the auditor learns facts revealing that a certification believed correct when issued was actually unwarranted.
The Eleventh and Ninth Circuits have held that accounting firms who knew their clients were using their statements and reports to commit fraud can be held liable under section 10(b). See Rudolph v. Arthur Andersen & Co., 800 F.2d 1040 (11th Cir.1986), cert. denied, 480 U.S. 946, 107 S.Ct. 1604, 94 L.Ed.2d 790 (1987); Roberts v. Peat, Marwick, Mitchell & Co., 857 F.2d 646 (9th Cir.1988). After considering all of the circumstances alleged in the respective complaints, both circuits found that if the plaintiffs could prove that the accounting firms had actual knowledge of fraud, a duty to disclose would be created. "Standing idly by while knowing one's good name is being used to perpetrate a fraud is inherently misleading." Rudolph, 800 F.2d at 1045. "Thus, it may be reasonable to expect an accountant to disclose fraud in this type of situation, where the accountant's information is superior and the cost to the accountant of disclosure is minimal." Roberts, 857 F.2d at 653 (citing Rudolph, 800 F.2d at 1045).
When an accounting firm independently verifies a public company's S.E.C. reports, investors understandably rely upon the auditor's investigation. Although investors might not recognize the publicly traded company's name, they will likely recognize such accounting firm names as Arthur Andersen or DeLoitte & Touche.
Accounting firms, which rely on the public's perception of their honesty and accuracy, worry about the effect on their reputation of defending even one fraud claim. The court is aware that a firm's reputation could be somewhat tarnished by allegations that the firm was involved in an ongoing fraud. Yet, every defendant in every case suffers dishonor when alleged to have committed an unlawful act. The legal standard *1252 in federal securities cases is high. Mere negligence is not enough. Herm v. Stafford, 663 F.2d 669, 684 (6th Cir.1981). Should a plaintiff be able to meet this high standard of proof, it is not unreasonable to hold the accounting firm liable for turning a blind eye to actual knowledge of fraud.
After carefully considering the reasoning of both sides on the issue of accountant liability for federal securities fraud, the court agrees with the Eleventh and Ninth Circuits' analyses. The spirit of the federal securities laws requires that those who are in positions to know of serious wrongdoing ought to disclose any such wrongdoing to the public. Consequently, the court imposes a duty to disclose when an accounting firm knows, or recklessly fails to know, of an ongoing fraud. Without in any way passing on the merits of this case, the court finds that Atlantis has stated a claim against Andersen for federal securities violations. Andersen's motion to dismiss these claims is denied.

B. Defendants' Motions to Dismiss federal securities claims under the particularity requirement of Fed.R.Civ.P. 9(b).

All defendants next claim that Atlantis fails to state a federal securities claim with the required particularity under Fed.R. Civ.P. 9(b). Rule 9(b) provides:
(b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.
The Sixth Circuit has rejected a strict reading of Rule 9(b). See Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679-80 (6th Cir.1988). In the context of complex securities fraud litigation, this court has likewise rejected rigid application of Rule 9(b). See Stone v. Mehlberg, 728 F.Supp. 1341, 1351 (W.D.Mich.1989); Mercer v. Jaffe, Snider, Raitt and Heuer, P.C., 713 F.Supp. 1019, 1026 (W.D.Mich. 1989).
To conform with the requirements of Rule 9(b), a plaintiff must, at a minimum, allege "the parties and participants to the alleged fraud, the representations made, the nature in which the statements are alleged to be misleading or false, the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud." Michaels Bldg., 848 F.2d at 679; see also American Town Center v. Hall 83 Associates, 912 F.2d 104, 109 (6th Cir.1990).
"Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." Michaels Bldg., 848 F.2d at 680. Further, Rule 9(b) must be read "in harmony" with Rule 8, which requires simplicity in pleading. Id. at 679. Thus, "the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." Id. In a Rule 9(b) analysis, the court must keep in mind that a "complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id.

1. Failure to plead scienter with particularity under Fed.R.Civ.P. 9(b).

In stating a cause of action under section 10(b), a defendant must be alleged to have acted with an "intent to deceive, manipulate or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). The Sixth Circuit has held that this requirement is satisfied by allegations of scienter  "actual knowledge"  or "reckless failure to know." Herm v. Stafford, 663 F.2d 669, 684 (6th Cir.1981); see also Molecular Technology v. Valentine, 925 F.2d 910, at 921 (6th Cir.1991) (scienter required for section 10(b)/rule 10b-5 violation); Mercer, 713 F.Supp. at 1025 (knowing or reckless language must be construed liberally in plaintiff's favor for purposes of a motion to dismiss.)
*1253 Fed.R.Civ.P. 9(b) provides that a defendant's state of mind may be averred generally. Fed.R.Civ.P. 9(b); Auslender v. Energy Management Corp., 832 F.2d 354, 356 (6th Cir.1987). Moreover, since scienter is a "fact specific" issue, it should normally not be determined on the pleadings. Klein v. King, [1989-1990 Transfer Binder] Fed. Sec.L.Rep. (CCH) ¶ 95,002 at 95,603, 1990 WL 61950 (N.D.Cal.1990).

a. Gaston and Warner Norcross' scienter.

Although motive is not required to plead scienter, motive can be a means to establish scienter. Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Atlantis has alleged sufficient motive by Gaston and Warner Norcross to commit fraud. First, Rospatch is alleged to have been one of Warner Norcross' major clients. Second, Gaston was on the Rospatch board of directors and thus had a direct interest in keeping the price of Rospatch stock high. Third, Warner Norcross is alleged to have handled all of the TPG acquisitions and other transactions that were the cause of the write-offs in 1989. Assuming Warner Norcross played a substantial role in the TPG deals as alleged, the factfinder could conclude that the firm had knowledge that the TPG acquisitions were worth significantly less than Rospatch stated they were worth. Further, Warner Norcross allegedly prepared the S.E.C. public documents which chronicled the company's worth. Fourth, Atlantis alleges that Gaston created interrelationships between Rospatch and other Warner Norcross clients for ulterior motives, solely to benefit Warner Norcross. For all of the above reasons, sufficient motive has been alleged to establish scienter by Warner Norcross and Gaston. See In re Citisource, Inc. Securities Litigation, 694 F.Supp. 1069, 1083 (S.D.N.Y. 1988) (certain degree of involvement in the affairs of a fraudulent issue might warrant an inference that status as issuer's counsel in itself inferred recklessness).

b. Arthur Andersen's scienter.

Andersen also argues that plaintiffs have not pleaded the required scienter. "Reckless conduct may be defined as a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care...." Sundstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033, 1045 (7th Cir.), cert. denied, Meers v. Sundstrand Corp., 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977).
The large TPG markdown in 1989 is the best allegation that Andersen knew, or was reckless in not knowing, of the alleged fraud at Rospatch. Atlantis complaint alleges that Rospatch's net worth was marked down 36% in one year. Taking this allegation as true, as the court must for the purposes of this motion, a factfinder could conclude that such a markdown should have at least required some affirmative action by Andersen. After all, Andersen's function as an independent auditor is to confirm for investors that what the company values itself at is indeed a close approximation of the company's true value. As scienter need only be averred generally, Fed.R.Civ.P. 9(b), Atlantis has adequately alleged Andersen's scienter.

2. Failure to inform each defendant of the charges with particularity under Fed.R.Civ.P. 9(b).

Defendants assert that Atlantis' complaint must be dismissed because of failure to inform each defendant of his or its precise role in the preparation and dissemination of the misleading public documents. In Arnold v. The Arnold Corp., 920 F.2d 1269 (6th Cir.1990), plaintiff did not specify which defendant sought to swindle him into agreeing to arbitration, only that all of the defendants sought to dupe him. 920 F.2d at 1279. The district court held that such a sweeping allegation was not specific enough under Rule 9(b), and was thus fatal to his claim. Id. at 1280.
However, the Sixth Circuit found that the district court erred in dismissing plaintiff's complaint. Id. After reciting the Sixth Circuit's relaxed view of Rule 9(b), Arnold held that plaintiff's allegations were particular enough to survive a motion *1254 to dismiss. Id. "[I]t is a principle of basic fairness that a plaintiff should have an opportunity to flush [sic] out a claim of fraud if fraud is pled with enough specificity to put defendants on notice as to the nature of the claim." Id. (citation omitted).
With the exception of the Outside Directors and defendant Smith, Atlantis has pleaded its claims with enough specificity to put each defendant on notice as to the nature of the claim against him or it.

a. Rule 9(b) Motion to Dismiss

Defendants Parini, Malpass, Harris, Warner Norcross, Gaston, and Arthur Andersen claim that Atlantis' complaint does not plead the required specificity under Fed.R.Civ.P. 9(b). Atlantis' complaint alleges that defendants Parini, Malpass, and Harris had actual knowledge that Rospatch's financial disclosures were materially overstated. Parini and Malpass were the officers alleged to be running the corporation. Harris was Rospatch's controller and was fired for keeping two sets of books on a TPG subsidiary.
Atlantis has identified which documents it bases its securities allegations upon and the circumstances surrounding the allegedly fraudulent statements made in, or omissions from, those documents. The complaint also states the role each of these defendants played in the preparation, review, and filing of the documents, their knowledge of the falsity, or their reckless disregard for the truth, of those documents. Atlantis, ¶¶ 33a-m, 36-44. Atlantis alleges its reliance on the fraud, and the injury it suffered by purchasing Rospatch stock at inflated prices. As in Mercer, "the facts pleaded amount to more than a bare legal conclusion." 713 F.Supp. at 1026. Parini, Malpass, Harris, Warner Norcross, Gaston, and Arthur Andersen have been sufficiently apprised of what they stand accused.

b. Outside Directors' Motion to Dismiss for particularity under Rule 9(b).

In contrast to Parini, Malpass, Harris, Warner Norcross, Gaston, and Andersen, Atlantis has failed to inform any of the Outside Directors of what he has done or failed to do. Thus, the federal securities law violations against the Outside Directors will be dismissed.
In Benoay v. Decker, 517 F.Supp. 490 (E.D.Mich.1981), aff'd without opinion, 735 F.2d 1363 (6th Cir.1984), Judge Gilmore dismissed a 19-count complaint against certain defendants on the basis that plaintiffs failed to allege fraud against those defendants with the required particularity. The court held:
... [E]ach individual defendant must be apprised separately of the specific acts of which he is accused, especially in a case involving multiple defendants. [citations omitted] "The complaint, therefore, may not rely upon blanket references to acts or omissions by all of the `defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." (citations omitted)
Id. at 493.
Arnold, supra, held that each defendant must be, at the very least, on notice of the nature of the claim against him. 920 F.2d at 1280.
Here, the "who, what, why, and when" as to the Outside Directors is fatally sparse. The court does not know why certain directors were named in some counts and not in others. For example, only Butler, Pharr, and Sebastian are alleged to be primary violators of section 10(b) and Rule 10b-5. From all the court can discern, Butler, Pharr, and Sebastian were chosen at random to be alleged as primary violators. Similarly, the court cannot determine why Vander Hyde, of all of the directors, is not alleged to be an aider and abettor of the primary violation.
Further, of all of the Outside Directors, only Pharr is alleged to be a "control person." While Pharr was the chairperson of the board of directors, the complaint is barren as to his involvement in Rospatch or the fraudulent scheme. In the Sixth Circuit, "A director of a corporation is not automatically liable as a controlling person. There must be some showing of actual participation in the corporation's operation *1255 or some influence before the consequences of control may be imposed." Herm v. Stafford, 663 F.2d 669, 684 (6th Cir.1981).
As an indication of the complaint's lack of specificity with regard to the Outside Directors, it also contains internal inconsistencies. The complaint alleges certain directors with fraud even though they were not on the board of directors at the time of the alleged fraud.
Atlantis alleges that since certain outside directors signed certain public documents, all of the Outside Directors can be found liable under the collective group product doctrine. This doctrine holds liable each member of a group when the entire group contributes collectively to a fraud. The Outside Directors contend that in order to state a cause of action under this doctrine, Atlantis must allege involvement or knowledge by the Outside Directors in the fraudulent scheme.
In In re Consumers Power Co. Sec. Litig., 105 F.R.D. 583 (E.D.Mich.1985), the plaintiffs alleged that all of the Consumers Power directors knew the company's statements concerning the Midland nuclear facility were misleading. Judge Joiner found the collective group product doctrine applicable, but he contrasted a different situation by stating:
It thus appears that a plaintiff suing a group of defendants who allegedly committed a variety of distinct fraudulent acts must specify which defendant is alleged to have done what act. However, when a plaintiff sues individual group members on the basis of the collective product of the group, specific allegations about the role of each defendant are unnecessary.
Id. at 593.
Whether or not this is a case of a continuing fraudulent act or a "variety of distinct fraudulent acts," Atlantis simply has not adequately pleaded that any or all of the Outside Directors knew or recklessly failed to know of any ongoing fraud at Rospatch. See Benoay, 517 F.Supp. at 493 (allegations in the complaint never surpass mere general allegations of fraud).
Although motive is not a pleading requirement, it is a common way of proving scienter. Beck v. Manufacturers Hanover Trust Co., 820 F.2d 46, 50 (2d Cir.1987), cert. denied, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). The Outside Directors lack any apparent motive to commit fraud. Most of the Outside Directors were employed outside Rospatch and none of them were in control of the day-to-day operations of the corporation. Many of the Outside Directors owned stock in Rospatch; if they knew of the alleged fraud, one would think they would have sold their stock before the stock took its nosedive. Atlantis has not alleged any insider dealings in this case.
Having found no allegations that the Outside Directors knew of ongoing fraud, the court does not need to reach the question of whether such knowledge would amount to anything more than a breach of fiduciary duty.
The court dismisses the Outside Directors from the federal securities law allegations under Fed.R.Civ.P. 9(b) without leave to amend. This is Atlantis' third complaint filed since this case began in federal district court in Florida almost a year ago. The present complaint totals 87 pages. Neither in the voluminous brief responding to these motions nor at oral argument did Atlantis intimate that it might be able to allege any more facts to tie the Outside Directors to the alleged fraud.
Furthermore, Atlantis has had two of its directors on Rospatch's board of directors since mid-1989. Those directors were privy to corporate information to which the more "typical" securities fraud complainant would not have had access. Finally, when Atlantis was considering buying Rospatch, Atlantis performed a "due diligence" investigation, upon which much of their complaint is based.
The court is aware that dismissal without leave to amend is a "harsh sanction." Craighead v. E.F. Hutton & Co., Inc., 899 F.2d 485, 495 (6th Cir.1990). However, the court is satisfied that Atlantis has had the time, opportunity, and access to information *1256 to amend its complaint to sufficiently allege wrongdoing by the Outside Directors and has not done so. Therefore, the federal securities fraud counts I, II, and III as to the Outside Directors are dismissed without leave to amend.
Since the Outside Directors have been dismissed from the federal securities law claims, there is no federal question jurisdiction over those defendants. Thus, the state law claims against the Outside Directors and Smith must also be dismissed, pursuant to Fed.R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction. See Service Hospital Nursing Home and Public Employees Union v. Commercial Property Services, 755 F.2d 499 (6th Cir.), cert. denied, 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985) (dismissal of pendent state claim required once federal claim dismissed).
Congress has established the basic rule that diversity jurisdiction exists only when there is complete diversity of citizenship. 28 U.S.C. § 1332. Since Arthur Andersen has partners in the same state as various plaintiffs, diversity jurisdiction does not exist. The Supreme Court has held that once diversity jurisdiction is destroyed and only state law claims remain against a defendant, the federal court loses jurisdiction over that defendant. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 377, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978).
Atlantis argues that this court should apply the rule of United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). In Gibbs, the Supreme Court held that pendent party jurisdiction may be exercised if (1) the state and federal claims derive from a common nucleus of operative facts, (2) plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, and (3) the interests of judicial economy would be served. 383 U.S. at 725, 86 S.Ct. at 1138.
However, Owen, supra, explicitly rejected the use of a Gibbs test where there is no federal claim against a defendant. 437 U.S. at 370-73, 98 S.Ct. at 2401-2402. Therefore, this court may not exercise jurisdiction over the Outside Directors under the rule of Owen Equipment, supra.

c. Smith's Motion to Dismiss under Rule 9(b).

Smith became the Chief Operating Officer of Rospatch in late 1988. He is alleged is to have signed Rospatch's 1988 Form 10-K. The court cannot ascertain, from reading the complaint, any other wrongdoing Smith is alleged to have committed.
In cases concerning officers who sign public documents, the Sixth Circuit has looked at the overall role the defendant had in the alleged scheme. See Holloway v. Howerdd, 536 F.2d 690, 697-698 (6th Cir. 1976) (No evidence that plaintiff's stock purchases were made by reason of officer's signature on the reports. Additionally, officer had acted in good faith). Smith's role in the alleged fraudulent scheme, apart from his signing one public document, is not alleged in Atlantis' complaint. Thus, Smith is not on notice as to the nature of the charge against him. Additionally, Smith appears to have acted at all times in good faith.
Smith will be dismissed from the federal securities claims because Atlantis has failed to plead a cause of action against him. For the same reasons the Outside Directors will be dismissed without leave to amend, Smith will also be dismissed without leave to amend. Furthermore, the court does not have subject matter jurisdiction over the state law claims against Smith for the same reasons the court has no jurisdiction over the Outside Directors. Therefore, Smith's motion to dismiss the state law claims will be granted.

C. Applicable Statute of Limitations to the Federal Securities Claims.

These consolidated actions were transferred, on defendants' motion, to this court pursuant to 28 U.S.C. § 1404(a). On a § 1404(a) transfer, the transferee court must apply the state law that the transferor court would apply. Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964) (Where defendants *1257 seek transfer, the transferee district court must apply the state law that would have been applied if there had been no change of venue); see also Ferens v. John Deere Co., 494 U.S. 516, 110 S.Ct. 1274, 1280-81, 108 L.Ed.2d 443 (1990) (Van Dusen rule applies even when plaintiffs initiate a change of venue). Accordingly, this court will apply the law that the Florida district court, where these lawsuits originated, would have applied to the statute of limitations. See Sargent v. Genesco, Inc., 492 F.2d 750, 758-59 (5th Cir.1974) (Section 10(b) suit transferred from New York to Florida. Florida federal district court applies New York's statute of limitations.)
The Florida district court would apply the law of the Eleventh Circuit. The Eleventh Circuit has recently held that federal courts apply the analogous state statute of limitations law to federal securities claims. Smith v. Duff and Phelps, Inc., 891 F.2d 1567, 1570 (11th Cir.1990). Therefore, following Eleventh Circuit precedent, the court will inquire into the analogous Florida statute of limitations law.
When Florida is the forum state in federal securities cases, federal courts have applied the two year/five year statute of limitations of Florida's Blue Sky laws, Fla.Stat. §§ 517.011 et seq., to federal securities law claims. King v. Gandolfo, 714 F.Supp. 1180, 1181 (M.D.Fla.1989) (citing Byrne v. Gulfstream First Bank & Trust Co., 528 F.Supp. 692, 693-94 (S.D.Fla.1981), aff'd without opinion, 720 F.2d 686 (11th Cir. 1983)). Under Florida's Blue Sky laws, claims must be brought within two years of discovery of the facts giving rise to the cause of action, but in any event not more than five years from the date such violation occurred. Fla.Stat. § 95.11(4)(e). As this court sits as if Florida were the forum state, the two year/five year limitations period applies to plaintiffs' securities fraud claims.
The complaints are timely under Florida's "two years from discovery" rule. The operative date of discovery of alleged Rospatch fraud was approximately September 1989, when Atlantis abandoned its attempt to purchase Rospatch and discovered Rospatch's alleged financial inconsistencies.
Defendants argue that the court should follow the lead of other circuits and adopt a new, shorter limitations period. Three circuits have adopted a uniform federal statute of limitationsone year from discovery and in any event no later than three year after the alleged securities violation. See Ceres Partners v. Gel Associates, 918 F.2d 349 (2d Cir.1990); Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385 (7th Cir.), petition for cert. filed, No. 90-526 (Sept. 26, 1990); In re Data Access Systems Securities Litigation, 843 F.2d 1537 (3rd Cir.1988), cert. denied sub. nom., Vitiello v. I. Kahlowsky & Co., 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988).
The Eleventh Circuit has recently rejected the new limitations period adopted by the Second, Third, and Seventh Circuits. See Smith v. Duff & Phelps, Inc., 891 F.2d 1567, 1570 (11th Cir.1990). This court has previously declined an invitation to follow the circuits that have adopted a uniform federal statute of limitations in section 10(b) cases. See Mercer v. Jaffe, Snider, Raitt and Heuer, P.C., 713 F.Supp. 1019, 1027 (W.D.Mich.1989). This case presents even less inviting circumstances to do so. First, the Eleventh Circuit, in a case decided one year ago, explicitly declined to follow the other circuits, remaining with the precedent of looking to the analogous state law limitations period. Second, the issue will very shortly be decided by the United States Supreme Court, which has granted certiorari in a Ninth Circuit case to resolve the split among the circuits. Lampf Pleva Lipkind Prupis & Petigrow v. Gilbertson et al., cert. granted, ___ U.S. ___, 111 S.Ct. 242, 112 L.Ed.2d 201 (1990).
Andersen argues that Florida law should not apply to it because Andersen was not added as a defendant until the action was transferred to Michigan. Without ruling on whether this court should apply Michigan law to the claims against Andersen, the court notes that applying Michigan law would serve Andersen's cause no better than applying Florida law.
*1258 In the Sixth Circuit, as in the Eleventh Circuit, courts look to the analogous state law for the limitations period applicable to 10b-5 actions. IDS Progressive Fund, Inc. v. First of Michigan Corp., 533 F.2d 340, 344 (6th Cir.1976). In Michigan, the six year statute of limitations for common law fraud, M.C.L. § 600.5813 governs federal securities law claims. Id. Michigan's two year fraudulent concealment statute, M.C.L. § 600.5855, qualifies the six year limitation period. Benoay v. Decker, 517 F.Supp. 490, 496 (E.D.Mich.1981), aff'd without opinion, 735 F.2d 1363 (6th Cir. 1984). Andersen concedes that if this statute of limitations applies to this case, plaintiffs' claims are not time barred. See January 2, 1991 Letter of Mr. Freeman, Andersen's counsel, to Judge Hillman.
However, Andersen argues that this court should disregard Sixth Circuit precedent. Courts in the Sixth Circuit, including this court, have declined to adopt a new limitations period. See Mercer, 713 F.Supp. at 1026; see also Katz v. First of Michigan, No. K87-264 CA4, slip op. at 3, 1989 WL 62196 (W.D.Mich.1989); Scholnick v. Schecter, 752 F.Supp. 1317 (E.D. Mich.1990). If Sixth Circuit interpretation on an important issue such as this is to be changed, I am happy to leave that responsibility with the Court of Appeals.
Andersen also asserts the novel argument that this court should use the Michigan state law borrowing statute and borrow the Pennsylvania statute of limitations for the class action lawsuit. Andersen urges the court to look to Pennsylvania because that is where the named class plaintiffs allegedly bought their Rospatch stock. However, the court looks to state law only for the analogous state statute of limitations. In every other respect, federal law applies. See Champion International Corp. v. United Paperworkers International Union, 779 F.2d 328, 332-34 (6th Cir.1985). Arthur Andersen's motion to dismiss the federal securities counts on statute of limitations grounds is denied.
A summary of the status of defendants' motions to dismiss Atlantis' federal securities claims is in order. In Count I, Atlantis alleges primary violation of § 10(b) and Rule 10b-5. Rospatch, Parini, Malpass, Harris, Gaston, Warner Norcross and Arthur Andersen's motions to dismiss are denied. Atlantis has pleaded sufficient facts to hold each of these defendants to trial. Because Atlantis has failed to state a primary section 10(b) violation against Butler, Pharr, and Sebastian (the Outside Directors) with the particularity required under Fed.R.Civ.P. 9(b), the Outside Director's motion to dismiss without leave to amend is granted.
The second count of Atlantis' complaint alleges a secondary violation of § 10(b) and Rule 10b-5 by named defendants as aiders and abettors. Parini, Malpass, Harris, Gaston, Warner Norcross and Arthur Andersen's motions to dismiss this claim are denied. The Outside Directors (except Vander Hyde, who was not named in Count II) and Smith's motions to dismiss this claim without leave to amend are granted.
The motions to dismiss the control person liability allegation, Count III, by Parini, Malpass, Gaston, and Warner Norcross are denied. Pharr's motion to dismiss Count III without leave to amend is granted.

D. State Law Claims

Before considering the requests to dismiss Atlantis' state law allegations, the court must resolve a choice of law question. As discussed above, this case was transferred to this court; the court must apply the state law the transferor court would apply. Van Dusen v. Barrack, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964) ("A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms"). Accordingly, this court will apply the law that the Florida district court would have applied to the state law claims.
In ruling on state law claims, a Florida district court would first analyze Florida's conflict of laws rules. In determining which state's local law will govern the substantive rights and liabilities of the parties to a tort action, the Florida Supreme Court has adopted a "significant relationships test." Bishop v. Florida Specialty Paint *1259 Co., 389 So.2d 999 (Fla.1980). This test is set forth in the Restatement (Second) of Conflict of Laws § 145 (1971):
145. The General Principle
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6 [dealing with general choice-of-law principles].
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicil [sic], residence, nationality, place of incorporation and place of business of the parties, and
(d) the place where the relationship, if any, between the parties is centered.
These contacts must be evaluated according to their relative importance with respect to the particular issue.
Bishop, 389 So.2d at 1000.
When this test is applied to this case, it is clear that Michigan has the most significant relationship to the action. The case involves the public sale of stock of a business located in Michigan, incorporated under its laws. Further, the lawsuit concerns the internal affairs of a Michigan corporation. The Restatement of Conflict of Laws states that "when a court entertains a suit involving the internal affairs of a foreign corporation, it will ... usually apply the local law of the state of incorporation...." Restatement (Second) of Conflict of Laws § 313 comment e (1971). Finally, the alleged fraud occurred in Michigan by individuals who are mostly Michigan residents.
By contrast, Florida's relationship with the cause of action is that one of the plaintiffs, Atlantis, does business there (although Atlantis is not incorporated in Florida) and Atlantis allegedly bought its stock in Florida. For all of the above reasons, Michigan state law will apply.

1. Defendants' Rule 9(b) Objection to State Law Claims

The state law claims sound in fraud and must be pled with particularity in accordance with Fed.R.Civ.P. 9(b). See Mercer, 713 F.Supp. at 1028. The court's finding that the federal securities law violations have been pled with sufficient particularity with respect to some defendants and not others applies equally to the state law fraud claims.

2. Breach of Fiduciary Duty

Count IV of Atlantis' complaint accuses all defendants except Rospatch of state law breach of fiduciary duty. Defendants argue that the breach of fiduciary duty claims are fatally defective because, under Michigan law, fiduciary duties are only owed to the corporation and not the individual shareholders. Atlantis' breach of fiduciary duty claims, defendants contend, cannot be brought as direct actions but must be brought derivatively.
In Michigan, corporate officers and directors owe the fiduciary duty of care and loyalty to the corporation and to its shareholders. Gaff v. Federal Deposit Insurance Corp., 828 F.2d 1145, 1151 (6th Cir.1987) (interpreting Michigan law and citing Berman v. Gerber Products Co., 454 F.Supp. 1310, 1319 (W.D.Mich.1978), aff'd, James v. Gerber Products Co., 587 F.2d 324 (6th Cir.1978)). Furthermore, a breach of this duty "gives rise to a cause of action by the shareholders in their own right." Gaff, 828 F.2d at 1151 (citation omitted). Atlantis, as a shareholder of Rospatch stock, may pursue breach of fiduciary duty claims directly against Rospatch, its officers, and directors.
Gaston and Warner Norcross argue they owe no fiduciary duty to plaintiffs. Gaston was a member of the Rospatch board of directors in addition to its attorney. As a director, Gaston had a common law fiduciary duty to the company's shareholders. Gaff, supra, 828 F.2d at 1151 (In Michigan, directors have a fiduciary duty to shareholders). Therefore, Gaston's *1260 motion to dismiss the state law breach of fiduciary duty claim is denied.
Warner Norcross asserts that it has no fiduciary duty to Rospatch's shareholders. The court agrees. "Michigan attorneys owe a duty of due care only to their clients." Stone v. Mehlberg, 728 F.Supp. 1341, 1351 (W.D.Mich.1989); see also Friedman v. Dozorc, 412 Mich. 1, 312 N.W.2d 585 (1981) (Attorney may not be held accountable to an adversarial party on a theory of negligence in bringing a lawsuit); Adell v. Sommers, Schwartz, Silver and Schwartz, P.C., 170 Mich.App. 196, 428 N.W.2d 26, 29 (1988), appeal denied, 432 Mich. 902 (1989) (Where attorney represents a corporation, no attorney-client relationship exists between the attorney and the shareholder so as to support a shareholder action for legal malpractice). Therefore, Warner Norcross' motion to dismiss the breach of fiduciary duty claim is granted.
Although Atlantis has named Andersen in the fiduciary duty count, Atlantis has not stated any facts that would establish Andersen's fiduciary duty to Atlantis. The court has held, supra at 18-20, that an auditor has a duty to disclose under the federal securities laws when it knows, or recklessly failed to know, of an ongoing fraud. This, of course, does not imply that an auditor has a state law fiduciary duty to shareholders. Therefore, Andersen's motion to dismiss this count is granted.

3. Common Law Fraud

Count V of Atlantis complaint accuses all defendants of common law fraud. In U.S. Fidelity and Guaranty Co. v. Black, 412 Mich. 99, 313 N.W.2d 77, 82 (1981), the Michigan Supreme Court set forth the following common law fraud rule:
The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.
Atlantis has pleaded a cause of action for common law fraud. The material representation was the overvalue of the company in the public documents. This representation is alleged to be false and was alleged to have been made with knowledge of its falsity. Atlantis has alleged that the representation was made with intention that Atlantis act upon it. Atlantis alleges it relied upon the representation and suffered injury when the true value of Rospatch was revealed. Therefore, defendants Rospatch, Parini, Malpass, Harris, Gaston, Warner Norcross, and Arthur Andersen's motions to dismiss Count V for common law fraud are denied.

4. Negligent Misrepresentation

Count VI of Atlantis' complaint accuses all defendants of negligent misrepresentation. Defendants contend that Michigan law does not recognize a cause of action for negligent misrepresentation in the context of securities offerings and thus Count VI of Atlantis' complaint should be dismissed.
In Williams v. Polgar, 391 Mich. 6, 215 N.W.2d 149 (1974), the Michigan Supreme Court set a standard of duty for a title abstractor who, pursuant to a professional contract, certifies the condition of the record of title for a particular piece of property. The Court held that the abstractor's duty to perform abstracting skills in a diligent and reasonably skillful manner extended to all persons an abstractor could reasonably foresee would rely on the accuracy of the abstract. 391 Mich. at 22, 215 N.W.2d 149.
In a footnote to a 1986 case, the Michigan Supreme Court noted that while privity was not required between plaintiff and defendant in a suit for negligent misrepresentation, "recovery was only permitted by those whose relationship to the action taken under the contract was reasonably foreseeable." *1261 Commercial Union Ins. Co. v. Medical Protective Co., 426 Mich. 109, 393 N.W.2d 479, 485 n. 5 (1986).
Lower Michigan courts have sustained negligent misrepresentation claims based upon foreseeability. See National Sand, Inc. v. Nagel Construction, Inc., 182 Mich. App. 327, 451 N.W.2d 618 (1990), certificate for question declined, 434 Mich. 1214, 456 N.W.2d 390 (1990) (plaintiff may bring action in tort when injured by defendant's negligent performance of contract even where no privity between parties); Law Offices of Lawrence J. Stockler, P.C. v. Rose, 174 Mich.App. 14, 436 N.W.2d 70, 82 (1989) (accounting firm which made inaccurate financial review was liable under negligent misrepresentation theory when accounting firm knew plaintiffs were relying on their review); Bacco Construction Co. v. American Colloid Co., 148 Mich.App. 397, 384 N.W.2d 427 (1986) (foreseeable that a contractor would rely on a project engineer's report in performing the project).
In Molecular Technology, supra, the Sixth Circuit, after acknowledging the sparsity of Michigan case law on negligent misrepresentation, held that an attorney could be held liable for negligent misrepresentation in a securities case if the attorney could reasonably foresee that investors would rely on the information provided in an offering circular. Slip op. at 8-9. The attorney, in a cover letter attached to the circular, stated that the circular "should be presented to each potential investor including any who have already subscribed for the debentures." Id. at 9. The attorney apparently did not have any personal contact with any of the three plaintiff-investors.
However, Molecular Technology can be distinguished from this case. First, Molecular Technology concerned a small, closely-held corporation. Second, there were only three investors who bought the debentures of the corporation. This case involves a large, publicly held corporation traded on the open market by many individual and institutional investors. Thus, Molecular Technology did not hold that Michigan law recognizes a negligent misrepresentation claim in cases such as the one before the court.
In In re Consumers Power Co. Securities Litigation, 105 F.R.D. 583 (E.D.Mich. 1985), Judge Joiner, after analyzing Michigan's and other states' laws of negligent misrepresentation, held that recognizing a cause of action for negligent misrepresentation in a securities case involving a large company would "expose defendants to a virtually unlimited amount of liability to any member of the public who happened to buy [the company's] stock during a given period." 105 F.R.D. at 597.
I am persuaded by Judge Joiner's reasoning in Consumers Power. If liability were to attach to negligent misrepresentation in a securities issue of a publicly traded corporation, there would be an enormous number of plaintiffs who would have cause to sue in any given case. Furthermore, the Michigan Supreme Court's decision in Williams, supra, did not intimate that the law should protect every investor from negligent misrepresentation in a large securities offer. "A federal district court ruling upon novel issues of state law in areas of important state policy requires unmistakable and precise authority to depart from a settled approach taken by the state's highest court." Mercer, 713 F.Supp. at 1029 (interpreting Michigan's negligent misrepresentation law). As the Sixth Circuit noted in Molecular Technology, "there has been little case law development of the tort of negligent misrepresentation in Michigan courts since [Williams]." Molecular Technology, supra, at 915. This court declines to stretch the Michigan common law of negligent misrepresentation to cover alleged negligence in the stock offering of a large, publicly traded corporate stock. Therefore, Atlantis' Count VI is dismissed without prejudice as to all defendants.

5. Constructive Fraud

Count VII of Atlantis' complaint accuses all defendants except Rospatch of constructive fraud. Unlike active fraud, constructive fraud has been defined by Michigan courts as a breach of a legal or *1262 equitable duty that tends to deceive others, regardless of the moral guilt of the person committing the fraud. General Electric Credit Corp. v. Wolverine Ins. Co., 420 Mich. 176, 362 N.W.2d 595, 601 (1984); Sumpter v. Kosinski, 165 Mich.App. 784, 419 N.W.2d 463, 471 (1988). Constructive fraud has been interpreted to designate what is, in essence, nothing more than the receipt and retention of unmerited benefits. Goodrich v. Waller, 314 Mich. 456, 22 N.W.2d 862, 868 (1946).
Constructive fraud, like negligent misrepresentation, would hold a defendant liable without any scienter by that defendant. Thus, it poses the same problems for securities law that were discussed in In re Consumers Power, supra. For constructive fraud, plaintiffs are not even required to prove negligence. Innocent misrepresentation is sufficient. U.S. Fibres, Inc. v. Proctor & Schwartz, Inc., 358 F.Supp. 467, 480 (E.D.Mich.1973) aff'd, 509 F.2d 1043 (6th Cir.1975) (interpreting Michigan law). The Michigan courts have given no indication that a cause of action exists for constructive fraud in the context of the present case. Therefore, Atlantis Count V alleging constructive fraud is dismissed as to all defendants.

6. Fraudulent Concealment

Count VIII of Atlantis' complaint alleges all defendants are liable for fraudulent concealment. Fraud may be consummated by suppression of facts and of truth, as well as by open assertions, since suppression of truth may amount to suggestion of falsehood. U.S. Fidelity and Guaranty Co. v. Black, 412 Mich. 99, 313 N.W.2d 77, 88 (1981). In order for the suppression of information to constitute "silent fraud," there must be a legal or equitable duty of disclosure. Id.
Plaintiffs in this case cannot find this duty to disclose in the federal securities law. See Dirks v. Securities and Exchange Commission, 463 U.S. 646, 653-54, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911 (1983). However, the duty can be found in defendants Rospatch, Parini, Malpass, Harris, and Gaston's fiduciary duties. And, while Arthur Andersen does not have a fiduciary duty, it has been found to have a duty to disclose material facts when it knew of federal securities fraud. Thus, it also has a duty to disclose under state common law. Warner Norcross has neither a fiduciary nor equitable duty to disclose material facts and its motion to dismiss this count is granted.

7. Florida Blue Sky Law

Count IX of Atlantis' complaint alleges that the defendants violated the Florida Securities and Investor Protection Act. Fla.Stat. § 517.301(1). Fla.Stat. § 517.241(3) provides:
(3) The same civil remedies provided by laws of the United States for the purchasers or sellers of securities, under any such laws, in interstate commerce extend also to purchasers or sellers of securities under this chapter.
The Florida Supreme Court has found that, in enacting § 517.301(1), the Florida legislature "intended that Florida Securities laws be hand-in-glove with federal securities laws and that Florida purchasers of securities be granted the full range of civil remedies offered by both Florida and federal securities laws." Oppenheimer & Co., Inc. v. Young, 456 So.2d 1175, 1178 (Fla. 1984). As this court has found that plaintiffs have stated federal securities law violations against defendants Rospatch, Parini, Malpass, Gaston, Harris, Warner Norcross, and Andersen, plaintiffs have also stated Florida Blue Sky violations against those defendants.
Defendants rely upon E.F. Hutton v. Rousseff, 537 So.2d 978 (Fla.1989) for the proposition that buyer/seller privity is required under the Florida securities statute. However, Rousseff dealt with Fla.Stat. § 517.211 and not § 517.241(3). See Civil Remedies Under the Florida Securities and Investor Act: The Impact of E.F. Hutton v. Rousseff, Fla. B.J. (Oct. 1990) at 36-40. Therefore, defendants' motion to dismiss Count IX of Atlantis' complaint is denied.

8. Florida RICO Claim

Atlantis' Count X alleges that Rospatch, Parini, Gaston, and Warner Norcross *1263 are liable for a civil violation of the Florida RICO statute. Florida law provides a civil remedy for a plaintiff who is injured by a pattern of criminal activity. Fla.Stat. § 772.104. "Criminal activity" is defined in the statute to include any criminal violation of "Chapter 517, relating to securities transactions." Fla.Stat. § 772.102(1)(a)3 (1989). Chapter 517, in language that tracks Rule 10b-5 of the federal securities laws, provides that it is unlawful to employ a scheme to defraud in connection with the sale of a security. Fla. Stat. 517.301.
Defendants argue that the appropriate targets of RICO civil violations are criminals. Yet, the Florida Supreme Court has focused on the nature of the activities rather than the status of the violators. Bowden v. State, 402 So.2d 1173, 1174 (Fla. 1981). Another Florida court has held that civil RICO does not require a nexus to organized crime. Banderas v. Banco Central del Ecuador, 461 So.2d 265 (Fla.Dist. Ct.App.1985). In Banderas, the court affirmed the lower court's holding that defendants violated the Florida civil RICO statute by engaging in a pattern of criminal activity. From June 1981 to April 1982, seventy fraudulent bills were submitted to the bank for payment and millions of dollars were stolen. Id. at 270. Here, the pattern of criminal activity was the alleged filing of S.E.C. reports containing material misstatements and omissions from 1987 to 1988. As the Florida RICO statute encompasses crimes relating to securities transactions, see Fla.Stat. § 772.102(1)(a)3, the court finds that Atlantis has stated a Florida civil RICO violation and defendants' motions to dismiss this count are consequently denied.
A summary of the court's disposition of the state law claims in the Atlantis complaint is in order. Count IV of Atlantis' complaint alleges breach of fiduciary duty. Parini, Malpass, Harris, and Gaston's motions to dismiss are denied. Warner Norcross' and Arthur Andersen's motions to dismiss are granted. The Outside Directors' and Smith's motions to dismiss for lack of jurisdiction is granted.
Count V of Atlantis' complaint alleges common law fraud. Rospatch, Parini, Malpass, Harris, Gaston, Warner Norcross, and Arthur Andersen's motions to dismiss are denied. The Outside Directors' and Smith's motions to dismiss for lack of jurisdiction are granted.
Count VI of Atlantis' complaint alleges negligent misrepresentation. All defendants' motions to dismiss this count are granted.
Count VII of Atlantis' complaint alleges constructive fraud. All defendants' motions to dismiss this count are granted.
Count VIII of Atlantis' complaint alleges fraudulent concealment. Rospatch, Parini, Malpass, Harris, Gaston, and Arthur Andersen's motions to dismiss are denied. Warner Norcross' motion to dismiss is granted. The Outside Directors' and Smith's motions to dismiss for lack of jurisdiction are granted.
Count IX of Atlantis' complaint alleges that defendants violated the Florida Securities and Investor Protection Act. Rospatch, Parini, Malpass, Harris, Gaston, Warner Norcross, and Arthur Andersen's motions to dismiss are denied. The Outside Directors' and Smith's motions to dismiss for lack of jurisdiction are granted.
Count X of Atlantis' complaint alleges a civil violation of the Florida RICO statute. Rospatch, Parini, Gaston, and Warner Norcross' motions to dismiss are denied.

II. Plato Paper Products, Inc. v. Rospatch, et al.; Case No. 1:90-cv-806
The same three federal securities claims alleged by Atlantis are asserted by Plato against all defendants. Plato, ¶¶ 53-95. Plato also asserts substantially identical claims against all defendants for common law fraud, negligent misrepresentation, and fraudulent concealment. Plato, ¶¶ 96-124.
As to Plato's three federal securities claims, the court adopts its analysis of the Atlantis federal securities claims. See discussion supra at 1246-1249.

A. The outside directors as control persons

*1264 The only difference between Atlantis and Plato's complaints on the federal securities claims is that Plato alleges that each of the Outside Directors was a "controlling person" under Section 20 of the 1934 Exchange Act, 15 U.S.C. § 78t. Atlantis alleges that only director Pharr of the Outside Directors was a controlling person. In the Sixth Circuit, "A director of a corporation is not automatically liable as a controlling person. There must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed." Herm v. Stafford, 663 F.2d 669, 684 (6th Cir.1981).
In their response, plaintiffs only reply that the Outside Directors were "well positioned to influence Rospatch" because they served on various committees. Plaintiffs' Response Br. at 65. In addition, plaintiffs assert there is a "presumption" that directors are controlling persons, but plaintiffs do not attempt to distinguish Herm, supra. Finally, plaintiffs contend that since certain Outside Directors signed certain public documents, that is sufficient to establish them as controlling persons.
In Nichols v. Merrill Lynch, Pierce, Fenner & Smith, 706 F.Supp. 1309 (M.D. Tenn.1989), a director was sufficiently alleged to be a control person. He was one of only four officers and shareholders. Id. at 1345. Significantly, the court found persuasive that the corporation was "not a large, public-held corporation with passive directors who are not involved in the company's operations." Id.
Here, Rospatch is a large, publicly-held corporation with directors who are not alleged to be active in the corporation. It is not Sixth Circuit law that directors are presumptively liable as control persons. See Herm, 663 F.2d at 684. Plaintiffs must allege facts that state a claim against the directors. Plaintiff Plato has not done so in its complaint.
The Outside Directors are dismissed from Plato's control persons claim, Count III, without leave to amend.

B. Negligent misrepresentation

Count V alleges negligent misrepresentation. In accordance with the court's disposition of this claim in the Atlantis case, see discussion supra at 1261-1263, the court dismisses all defendants from Count V in the Plato lawsuit.

C. Fraud and fraudulent concealment

Count IV alleges all defendants have committed common law fraud. Count VI alleges all defendants have committed fraudulent concealment. Defendants, in their motion to dismiss, presented no arguments regarding the dismissal of the common law fraud and fraudulent concealment claims.[3] Defendants' motions to dismiss are denied.

III. Atcovitz v. Beadle, et al.; Case No. 1:90-cv-807
Atcovitz is brought derivatively on behalf of Rospatch, claiming diversity jurisdiction and alleging solely state law claims.[4] Count I asserts a breach of fiduciary duty claim against the Outside Directors, Gaston, Harris, Malpass, Parini, Smith, and Vander Hyde. Atcovitz, Verified Second Amended Complaint, ¶¶ 116-126. Count II alleges that Warner Norcross aided and abetted a breach of trust. Atcovitz, ¶¶ 127-133. A civil conspiracy claim is alleged in Count III against the Outside Directors, Gaston, Harris, Malpass, Parini, and Warner Norcross. Atcovitz, ¶¶ 134-137. Count IV prays for declaratory and injunctive relief from the Outside Directors, Gaston, Malpass, Parini, and *1265 Smith's breach of fiduciary duty. Atcovitz, ¶¶ 138-145.

A. Breach of fiduciary duty

Count I alleges a breach of fiduciary duty against the Outside Directors, Parini, Malpass, Smith, and Gaston. As all of these individuals are either officers or directors of Rospatch, a claim for breach of fiduciary duty under Michigan law has been stated against them. Gaff v. Federal Deposit Ins. Corp., 828 F.2d 1145, 1151 (6th Cir.1987) (interpreting Michigan law). See discussion supra at 1260-1261. Defendants motions to dismiss Count I of the Atcovitz derivative suit are denied.

B. Aiding and abetting a breach of trust

Count II alleges that Warner Norcross is an aider and abettor of a breach of trust. Atcovitz has not cited any cases or statutes in which Michigan has recognized this cause of action. The court's research has not uncovered any law recognizing this cause of action. Therefore, Warner Norcross' motion to dismiss Count II is granted.

C. Civil conspiracy

Count III of the Atcovitz derivative complaint alleges that the Outside Directors acted in concert and conspired to commit the tortious act of breach of fiduciary duty that injured the corporation. ¶ 148.
In Michigan, "[a] conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means." Fenestra Inc. v. Gulf American Land Corp., 377 Mich. 565, 141 N.W.2d 36, 48 (1966); accord Mercer, 713 F.Supp. at 1030. The focus of a civil conspiracy claim is the damage, not the conspiracy itself. Thus, conspiracy allegations not attached to allegations of a substantive wrong are not actionable. Fenestra, 141 N.W.2d at 49.
As the derivative suit has stated a claim for breach of fiduciary duty, it has also stated a claim for civil conspiracy. Defendants' motions to dismiss Count III of Atcovitz's complaint are denied.

D. Declaratory judgment and injunctive relief

In Count IV, plaintiffs have requested a declaratory judgment and injunctive relief. This court's review of Count IV has not revealed an independent cause of action, but merely asserts a remedy should they prevail on their substantive claims. The court will consider plaintiffs' request for equitable relief if and when plaintiffs establish their right to relief under one or more of the substantive claims.

E. Parini and Malpass' Rule 12(b)(6) Motion to Dismiss

Attached to their motion to dismiss, Parini and Malpass submitted affidavits and a settlement/indemnification agreement. The documents allegedly support the contention that Parini and Malpass cannot be sued by the corporation either directly or derivatively.
Parini and Malpass move to dismiss the derivative complaint pursuant to Fed.R. Civ.P. 12(b)(6). The Sixth Circuit has held that it is reversible error to consider matters outside the complaint on a motion to dismiss for failure to state a claim. Sims v. Mercy Hospital, 451 F.2d 171, 173 (6th Cir.1971); see also Hildebrand v. Board of Trustees of Michigan State University, 607 F.2d 705, 709 (6th Cir.1979), cert. denied, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982) ("When examining a complaint, one must look solely at the allegations made and assume they are true. If a judge considers affidavits or other materials, a motion to dismiss a complaint is converted into a motion for summary judgment").
Parini and Malpass argue that since the indemnification agreement was mentioned in the Atcovitz derivative complaint, the court should take the agreement into consideration and remove them from the scope of the disinterested person's investigation. However, Atcovitz contends that the very entering into the indemnification agreement itself was part of the ongoing fraudulent *1266 and deceptive scheme on the part of Parini and Malpass.
Parini and Malpass also argue that since defendants have moved to dismiss under Fed.R.Civ.P. 9(b), 12(b)(1) and 12(b)(6), affidavits may be considered by the courts. However, the only defendants who have any colorable claim for dismissal under Rule 12(b)(1) are the Outside Directors and Smith, not Parini or Malpass. There is a factual issue whether Parini and Malpass have breached their fiduciary duties as well as committed civil conspiracy. Therefore, Parini and Malpass' motion to dismiss the derivative suit is denied.
In summary, Warner Norcross' motion to dismiss Count II is granted. All other defendants' motions to dismiss Count I for breach of fiduciary duty and Count III for civil conspiracy to commit the breach of fiduciary duty is denied.

ORDER

Atlantis Group, Inc. v. Rospatch Corp. et al.; Case No. 1:90-cv-805
In accordance with the opinion issued this date,
IT IS HEREBY ORDERED that Rospatch's motion to dismiss Counts I, V, VIII, IX, and X is DENIED. Rospatch's motion to dismiss Count VI is GRANTED;
IT IS FURTHER ORDERED that the Butler, Pharr, and Sebastian's motion to dismiss without leave to amend Count I is GRANTED. The Outside Director's (except Vander Hyde) motion to dismiss without leave to amend Count II is GRANTED. Pharr's motion to dismiss without leave to amend Count III is GRANTED. The Outside Directors' motion to dismiss Counts IV, V, VI, VII, VIII, and IX for lack of jurisdiction is GRANTED;
IT IS FURTHER ORDERED that Parini and Malpass' motion to dismiss Counts I, II, III, IV, V, VIII, and IX, is DENIED. Parini's motion to dismiss Count X is DENIED. Parini and Malpass' motion to dismiss Counts VI and VII is GRANTED;
IT IS FURTHER ORDERED that Harris' motion to dismiss Counts I, II, IV, V, VIII, and IX is DENIED. Harris' motion to dismiss Counts VI and VII is GRANTED;
IT IS FURTHER ORDERED that Smith's motion to dismiss without leave to amend Count II is GRANTED. Smith's motion to dismiss Counts IV, V, VI, VII, VIII and IX for lack of jurisdiction is GRANTED;
IT IS FURTHER ORDERED that Gaston and Warner Norcross' motion to dismiss Counts I, II, III, V, IX, and X is DENIED. Gaston's motion to dismiss Counts IV and VIII is DENIED. Warner Norcross' motion to dismiss Counts IV and VIII is GRANTED. Gaston and Warner Norcross' motion to dismiss Counts VI and VII is GRANTED;
IT IS FURTHER ORDERED that Arthur Andersen's motion to dismiss Counts I, II, V, VIII, and IX are DENIED. Arthur Andersen's motion to dismiss Counts IV, VI, and VII is GRANTED.

Plato Paper Products, Inc. v. Rospatch et al.; Case No. 1:90-cv-806
IT IS HEREBY ORDERED that Rospatch's motion to dismiss Counts I, IV, and VI is DENIED. Rospatch's motion to dismiss Count V is GRANTED.
IT IS FURTHER ORDERED that the Outside Directors' motion to dismiss without leave to amend Counts I, II, and III is GRANTED. The Outside Directors' motion to dismiss for lack of jurisdiction Counts IV, V, and VI is GRANTED.
IT IS FURTHER ORDERED that Parini and Malpass' motion to dismiss Counts I, II, III, IV and VI is DENIED. Parini and Malpass' motion to dismiss Count V is GRANTED.
IT IS FURTHER ORDERED that Harris' motion to dismiss Counts I, II, III, IV and VI is DENIED. Harris' motion to dismiss Count V is GRANTED.
IT IS FURTHER ORDERED that Smith's motion to dismiss Counts I, II, and III is GRANTED. Smith's motion to dismiss for lack of jurisdiction Counts IV, V, and VI is GRANTED.
IT IS FURTHER ORDERED that Gaston and Warner Norcross' motion to dismiss *1267 Counts I, II, III, and IV is DENIED. Gaston and Warner Norcross' motion to dismiss Count V is GRANTED. Gaston's motion to dismiss Count VI is DENIED. Warner Norcross' motion to dismiss Count VI is GRANTED.
IT IS FURTHER ORDERED that Arthur Andersen's motion to dismiss Counts I, II, IV, and VI is DENIED. Arthur Andersen's motion to dismiss Count V is GRANTED.

Atcovitz v. Beadle, et al.; File No. 1:90-cv-807
IT IS HEREBY ORDERED that the Outside Directors' motion to dismiss Counts I and III is DENIED.
IT IS FURTHER ORDERED that Parini and Malpass' motion to dismiss Counts I and III is DENIED.
IT IS FURTHER ORDERED that Harris' motion to dismiss Counts I and III is DENIED.
IT IS FURTHER ORDERED that Smith's motion to dismiss Count I and III is DENIED.
IT IS FURTHER ORDERED that Gaston's motion to dismiss Counts I and III is DENIED.
IT IS FURTHER ORDERED that Warner Norcross' motion to dismiss Count II is GRANTED.
NOTES
[1] Additionally, defendants claim that Plato Paper Products, which purchased its stock in April 1987, may not represent the other members of the class who purchased stock at other times. This question is pending before the court in the motion to certify the proposed class action and will be resolved therewith.
[2] The court notes that in a discovery production motion now pending before Magistrate Judge Greeley, Rospatch is asserting the attorney-client privilege with regard to communications between Rospatch and Gaston. Thus, Warner Norcross and Gaston are attempting to bind themselves for attorney-client privilege matters and distance themselves in this motion to dismiss.
[3] These claims in this class action lawsuit cannot be analyzed in the same manner as the identical claims in Atlantis suit because of the necessity to plead reliance. Presently before the court are the motions to grant class certification. A threshold issue in the certification motion is whether a class plaintiff can pursue claims which require proof of reliance by each class member.
[4] Pursuant to M.C.L.A. § 450.1495, Professor Joel Seligman was appointed on March 1, 1991, as a disinterested person to investigate the derivative lawsuit. See Docket Number 212. Professor Seligman will investigate whether proceeding with the derivative suit is in the best interest of Rospatch.